UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL J. PULIZOTTO,

*Plaintiff,*

-against

JUDITH N. MCMAHON, Individually and Personally, and in Her Capacity as the Former Administrative Judge for Civil Matters in Richmond County, New York and in Her Capacity as a Justice of the Supreme Court, RONALD P. YOUNKINS, Individually and Personally, and in His Capacity as the Executive Director of the New York State Office of Court Administration, JOHN GEORGE, Individually and Personally, and in His Capacity as Chief of Administration of the New York State Office of Court Administration, MICHAEL MAGLIANO, Individually and Personally, and in His Capacity as Chief of the Department of Public Safety for the New York State Unified Court System, THE NEW YORK STATE COURT OFFICERS' ASSOCIATION, TED KANTOR, Individually and Personally, in His Capacity as Vice President of the New York State Court Officers' Association and in His Capacity as a New York State Court Officer, STEPHEN MIKOS, Individually and Personally, in his Capacity as an Officer of the New York State Court Officers' Association and in His Capacity as a New York State Court Officer,

*Defendants.*

---

Case No.: _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

MICHAEL J. PULIZOTTO, Plaintiff in this this matter, by his attorneys, THE LUTHMANN LAW FIRM, PLLC, as and for its complaint as against the above-named Defendants alleges as follows:

## PRELIMINARY STATEMENT

1.      If reasonable persons cannot feel safe in and around a courthouse, then can any reasonable person feel safe in any public place?

2.      If a child cannot receive the protection of the laws by court administrators inside a courthouse, then how can the rights of that child expect to be respected outside the courthouse?

3.      If a black woman court employee cannot be heard to meaningfully redress employment-related grievances when she is called a "nigger" be a co-worker in the courthouse, then how can anyone believe that "Equal Justice Under the Law" can be dispensed in that courthouse?

4.      If the administration of justice is seen to be bent and manipulated by those who would be entrusted by the sovereign people to dispense justice without partiality or favor, then what opinion do voters and taxpayers have when these same manipulators continue to bend and manipulate the scales of justice without impunity?

5.      If countless criminal defendants have been unwittingly "scammed" out of their right to a fair and impartial trial by an Administrative Judge – District Attorney team (who are also husband and wife) to avoid "defense-oriented judges," and the criminal defendants' attorneys are none the wiser, then what do constitutional protections mean if there are no "guardians at the gates" to ensure that fundamental rights are meaningfully presented in defense of the accused?

6.      All of these egregious violations of the public trust and the proper administration of justice have been perpetrated by the Defendants in and around the Richmond County Courthouse made possible through the "blind eye" of the Office of Court Administration at 25 Beaver Street, New York, New York.

2

## **NATURE OF THE ACTION**

7.    This action is, at bottom, to seek redress for the injuries suffered by Plaintiff at the hands of several state actors within the New York State Unified Court System. Defendants' actions and omissions have caused Plaintiff severe and substantial harm as outlined herein as to Plaintiff's constitutional rights as well as pendant state statutory and common law claims for which relief may be granted by this court.

8.    As detailed below, the primary retaliatory acts against Plaintiff occurred on and about and between September 5, 2017 through September 8, 2017.

9.    As further detailed below, the facts that lead up to September 2017 are complex and begin more than two years prior.

10.    As further detailed below, all activity complained of by the Plaintiff as to the conduct alleged against judicial officers herein is alleged to have been committed by said defendants <u>solely</u> within the context of their administrative authority and duties (i.e., in their capacities as workplace supervisors) and not within the province of any judicial function.[1]

## **JURISDICTION**

11.    The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983 and §1985, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and 28 USC § 2201 *et seq.* due to defendants' current and imminent violations of Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

---

[1] Thus, any claim of absolute immunity that may be cited by any judicial defendant would be inapplicable and without merit. *Forrester v White*, 484 US 219 (1988).

12.     As the deprivation of rights complained of herein occurred based on the actions of Defendants within the Southern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## PARTIES

13.     Plaintiff MICHAEL J. PULIZOTTO ("PULIZOTTO" or "Plaintiff") is a natural person who resides in Richmond County, New York.

14.     PULIZOTTO was, beginning in July 2015 and until September 2017, the Chief Clerk of the Richmond County Courts.

15.     PULIZOTTO is a trail-blazer as he was the first openly-gay Chief Clerk for any county in the City of New York.

16.     Defendant JUDITH N. MCMAHON ("JUDGE MCMAHON", "J. MCMAHON" or a "Defendant"), is a natural person who resides in Richmond County, New York.

17.     JUDGE MCMAHON is sued Individually and Personally, and in Her Capacity as the Former Administrative Judge for Civil Matters in Richmond County, New York and in Her Capacity as a Justice of the Supreme Court,

18.     Defendant RONALD P. YOUNKINS ("YOUNKINS" or a "Defendant"), is a natural person who resides in Westchester County and who maintains a principal office at 25 Beaver Street, New York, New York.

19.     YOUNKINS is sued Individually and Personally, and in His Capacity as the Executive Director of the New York State Office of Court Administration,

20.     JOHN GEORGE ("GEORGE" or a "Defendant"), is a natural person who resides in Westchester County and who maintains a principal office at 25 Beaver Street, New York, New York.

4

21.     GEORGE is sued Individually and Personally, and in His Capacity as Chief of Administration of the New York State Office of Court Administration,

22.     MICHAEL MAGLIANO ("MAGLIANO" or a "Defendant"), is a natural person who resides in the State of New Jersey and who maintains a principal office at 25 Beaver Street, New York, New York.

23.     MAGLIANO is sued Individually and Personally, and in His Capacity as Chief of the Department of Public Safety for the New York State Unified Court System,

24.     THE NEW YORK STATE COURT OFFICERS' ASSOCIATION ("NYSCOA"), is, upon information and belief, an unincorporated association existing under the laws of the State of New York with offices at 321 Broadway, New York, New York. Service upon NYSCOA may be made by service upon the NYSCOA's President or Secretary.

25.     TED KANTOR ("KANTOR" or a "Defendant"), is a natural person who resides in Richmond County, New York.

26.     KANTOR is sued Individually and Personally, in His Capacity as Vice President of the New York State Court Officers' Association and in His Capacity as a New York State Court Officer,

27.     STEPHEN MIKOS, ("MIKOS" or a "Defendant") is a natural person who resides in Richmond County, New York.

28.     MIKOS is sued Individually and Personally, in his Capacity as an Officer of the New York State Court Officers' Association and in His Capacity as a New York State Court Officer.

5

## FACTS COMMON TO ALL CLAIMS

29.    After Plaintiff had reported, as a citizen and attorney, official corruption and misconduct of public concern to the UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK and subsequently as an attorney, citizen and court administrator to officials within the New York State Unified Court System (some of whom are named defendants herein), defendants retaliated against Plaintiff in an *open and notorious* manner that is corroborated by multiple firsthand press accounts in various broadcast and print media and a multitude of other evidence.

30.    When Plaintiff was appointed Chief Clerk in July 2015, the Administrative Judge for Richmond County[2] was defendant The Honorable JUDITH N. McMAHON ("Judge McMahon").

31.    At that time, Judge McMAHON had already been directed by her superiors to have no involvement whatsoever in the Criminal Term of the Court due to the fact that her husband (The Honorable MICHAEL E. McMAHON) was then a declared candidate for District Attorney of Richmond County[3].  The Honorable STEPHEN J. ROONEY was thereby appointed as Acting Administrative Judge for Criminal Matters in Richmond County.  Judge Rooney[4] then became Administrative Judge for Criminal Matters on a permanent basis after MICHAEL E. McMAHON won the election.

---

[2]  As the District Court is certainly aware, "Administrative Judge" in the context of this case denotes a supervising judge in the New York State Unified Court System and not an "administrative judge" in the context of an executive branch agency official with quasi-judicial authority.

[3]  MICHAEL E. McMAHON ("RCDA MCMAHON") was subsequently elected Richmond County District Attorney and still presently in that office.

[4]  Judge Rooney's wife, KATE ROONEY, has a close personal and business relationship with QUIRK.  Further, Judge Rooney hired as his law clerk the son of the McMAHONs' campaign manager (John Vitucci).

32.     JUDITH N. McMAHON never ceased exerting authority and influence over criminal matters in Richmond County.  To the contrary, JUDITH McMAHON immediately began directing day-to-day operations of the Criminal Term, as well as budget and policy decisions and all other facets of supervision.  J. McMAHON's improper influence and involvement became more brazen as time passed

33.     There are numerous examples in the underlying complaint of J. McMAHON's illegal and unethical involvement in criminal matters.   Some of these examples include wholesale control over all Grand Jury matters[5], handpicking judges for various applications and trials, as well as an attempt to tamper with jury deliberations in a serious felony trial in June 2016.

## USING PART N TO JUDGE-SHIFT CRIMINAL CASES

34.     At this time, J. McMAHON is under multiple investigations.

35.     RCDA McMAHON and J. McMAHON conspired to develop and use Part N (the Special Narcotics Part) as a way to steer grand jury applications away from judges who were deemed "defense oriented judges" and towards the Honorable Charles Troia, (acting Supreme Court Justice).

36.     Judge Troia, an erudite jurist, was previously serving as an acting Supreme Court Justice and was assigned to civil parts by the Administrative Judge, the District Attorney's wife.

---

[5]  This includes conversations in front of Plaintiff and others between both JUDITH and MICHAEL McMAHON about Grand Jury and other District Attorney-related matters.

37. In June of 2015, when RCDA McMAHON announced his candidacy, an Administrative Order was signed bifurcating the administration of the Civil Term from the Criminal Term in Richmond County.

38. Pursuant to that Administrative Order, Justice Rooney became the Administrative Judge for criminal matters and J. McMAHON retained the post of Administrative Judge for civil matters.

39. J. McMAHON had a questionable interpretation of the Administrative Order. J. McMAHON believed the Administrative Order also gave her expansive powers over the courthouse, the adjoining buildings (including the grand jury room), court personnel (including Part N personnel even when they were sitting in criminal term), press matters (Ramsay Orta criminal case), etc.

40. Even when Judge Troia sat as Part N Judge, he was still "under the thumb" of Judge McMahon, who would relay directives to him on Part N cases.

41. The way the Part N "scam" worked was that so long as RCDA McMAHON's office labelled the "TOP CHARGE" in the case as a drug charge, the case would go to Judge Troia. This means that a grand jury subpoena related to a murder suspect who was found with a joint in his pocket upon arrest was assured to go to Part N so long as RCDA McMAHON's office labelled the marihuana offense the "TOP CHARGE".

42. RCDA McMAHON's office did regularly and inordinately label cases that were not "drug cases" as "TOP CHARGE" drug cases so that they could go before Judge Troia in _ex parte_ grand jury and warrant applications, where it was perceived better treatment would be received than if RCDA McMAHON's office subjected itself to "the Wheel" and the random probability that any judge could be assigned.

43.    RCDA McMAHON's office, after they received the *ex parte* relief requested (wire-taps, evidence, etc.), could always amend the indictment to change to "TOP CHARGE" or even remove the drug-related offence(s).

44.    In all cases to date, it appears that the criminal defense attorneys practicing in Part N were none the wiser to this sharp practice that smacks of constitutional violations.

45.    J. McMAHON even said that Justice Mario Mattei and Justice Wayne Ozzi were too "defense oriented".

46.    J. McMAHON constantly meddled in Judge Troia's part, particularly in Part N matters.

47.    Justice Rooney, a former prosecutor and seasoned criminal judge who was supposed to be the Administrative Judge for criminal matters at the time, saw the problems with Part N from the get-go, but he was powerless to do anything because the District Attorney-Judge / husband-wife team was just too powerful.

48.    Justice Rooney said in recordings that J. McMAHON was "in the criminal lane" and "someone is going to drop a dime". LISTEN HERE – Available at: https://drive.google.com/file/d/1O_dGGTuceXdjgxwdND2554h1PEROLEow/view?usp=sharing

49.    Judge Troia, because of his inexperience on the criminal side and probably not wanting to rock the OCA boat and secure career advancement, served very much as a "rubber stamp" for RCDA McMAHON's office as was RCDA McMAHON and J. McMAHON's plan all along.

50.    In recordings, Judge McMahon lauded Part N as a "great success."

51.     In recordings, Justice Rooney said that Part N was a "failure."

52.     The implications of just the Part N allegations alone (and there are a multitude of others involving due process and stifling the right to petition for the redress of grievances in the EEO context and others), create a fundamental problem as to the administration of justice in Richmond County, whereby dozens if not hundreds of criminal defendants whose cases passed through Part N were subject to a deprivation of their rights to a fair and impartial trial at every stage of the proceeding based on the Part N "scam".

## NYSCOA IS McMAHON'S "MUSCLE"; OCA KNOWS BUT DOES NOTHING.

53.     J. McMAHON, with the aid of as-of-now non-party DENNIS W. QUIRK ("QUIRK"), Defendant KANTOR, Defendant MIKOS, and other high-ranking New York State Court Officers ("NYSCOA Leadership"), ran the Richmond County Courthouse as a personal and political fiefdom for their own personal and political gain through direct and indirect coercion, intimidation and threats.

54.     J. McMAHON and NYSCOA LEADERSHIP coerced Plaintiff on numerous occasions to facilitate their illegal and unethical actions.  Coercive tactics included, but were not limited to, frequent verbal abuse, knowingly false *sub rosa* allegations of sexual misconduct having been committed by Plaintiff based on his sexual orientation, and explicit and indirect threats of loss of employment.

55.     Criminal defense attorneys and at least one defense organization had made multiple complaints to non-party Honorable LAWRENCE K. MARKS in his capacity as the Chief Administrator of the Courts about Judge McMAHON.

10

56.     Plaintiff had also reported some of this misconduct as early as September 4, 2015 to Defendant RONALD P. YOUNKINS who is the Executive Director of the New York State Office of Court Administration (i.e., the highest ranking nonjudicial officer in the state).

57.     Further, YOUNKINS, GEORGE, and MAGLIANO (the "OCA Defendants"), were well-aware of the abusive and threatening nature of both JUDITH McMAHON and NYSCOA LEADERSHIP.

58.     For instance, on one date in the summer of 2015, J. McMAHON screamed at YOUNKINS over the phone as though he was a child in order to resolve a matter with furniture in the new courthouse.  Despite all of these complaints, nothing was done to address the situation.

### J. McMAHON COVERS UP EEO COMPLAINTS

59.     In February 2016, JUDITH McMAHON directed Plaintiff to take no action on a discrimination/hostile work environment EEO claim based on race and gender brought by an African-American female Court Officer for the explicit purpose of not wanting to "make any waves" in the reappointment of another judge to whom this Court Officer was assigned.

60.     The EEO complaint involved a white male supervising Court Officer who was allegedly hostile toward the subordinate, African-American female Court Officer.  The reappointment for the judge in question was not ripe until at least 10 to 12 months *after* JUDITH McMAHON directed Plaintiff to take no action.  Even after that judge was reappointed in January of 2017, Plaintiff was never permitted to officially investigate the matter.

61.     Moreover, in December 2013, the same African-American female Court Officer was publicly called a **"nigger"** by an intoxicated white female Court Officer who was then (and for a long time) in a very public romantic relationship with non-party Major STEVEN PANELLA ("Major PANELLA" or "PANELLA")[6] is the highest-ranking uniformed supervisor in the courthouse.

62.     The December 2013 event, like the February 2016 discrimination complaint, were readily covered up by local court officials.  PANELLA was a primary intermediary who executed the *sub rosa* directives issued by J. McMAHON and NYSCOA LEADERSHIP.  Had these events not been covered up, they would have redounded to the detriment of PANELLA, thereby injuring and possibly eliminating PANELLA's ability to serve McMAHON and NYSCOA LEADERSHIP.

63.     It was after the February 2016 incident that Plaintiff and his attorneys reported the actions of the McMAHONs, NYSCOA LEADERSHIP and others to the UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK. Multiple meetings ensued between the Plaintiff and the Government.

---

[6]   As detailed in the underlying complaint, PANELLA had multiple open romantic relationships with female subordinates over his many years, two of whom are still under his command.  He is now dating QUIRK's daughter who is Judge Susan Quirk of the Civil Court in Staten Island.  This is relevant to the extent that while no court official has so much as admonished PANELLA for his on-the-job romances (all of which, until now, were with subordinate female officers under his direct command), it was the openly gay Chief Clerk/Plaintiff who was threatened by McMAHON and QUIRK as having had an affair with a straight male Court Officer friend and even intimations that Plaintiff brought food to the court officers so he could obtain sexual favors; i.e., if the Chief Clerk is gay, then he must be on the prowl of every male court officer.  McMAHON and QUIRK had an obligation to report these allegations, but they never did because those allegations are pure fantasy and were designed and issued only to coerce Plaintiff within the context of McMAHON and QUIRK having committed the New York State felony of Coercion in the First Degree (New York Penal Law § 135.65 [2][c]) to coerce Plaintiff to violate his duty as a public servant.

**PLAINTIFF BEGINS MAKING AUDIO RECORDINGS EARLY IN HIS TENURE**

64.    Early on in his tenure, Plaintiff began <u>legally</u> recording some conversations between him and defendant JUDITH McMAHON for several reasons.

65.    First, as a court administrator, Plaintiff had an affirmative duty to report any conduct for which he had a good faith basis to believe constituted official corruption and misconduct by court officials.  This includes Plaintiff's affirmative obligation to properly address employee complaints of discrimination and hostile work environment.

66.    Second, it was clear from the start that court officials did not want to acknowledge the official corruption and misconduct in the courthouse and that they would continue their *hear no evil, see no evil* approach to ethics and court administration.

67.    Third, based on the fact that JUDITH McMAHON's actions were becoming more brazen as time passed, it was clear that at some point in the *then* not too distant future that her corrupt bargain would be exposed.  Plaintiff would have been an outstanding candidate for a scapegoat to either mitigate or wholly alleviate any consequences on the McMAHONs and NYSCOA LEADERSHIP.

68.    Fourth, as a government attorney, Plaintiff was, at all times, under the obligation to report information related to the observation of attorney wrongdoing to a tribunal or other authority authorized to investigate and act on the conduct. See NYSBA Ethics Opinion 1120.

69.    Accordingly, Plaintiff felt compelled to resort to audio recording certain conversations.

70.    Plaintiff believed that his reporting obligations were satisfied after he and his attorneys met with the Assistant United States Attorney's Office and other authorities authorized to investigate and act on the conduct (the "Authorities").

**PLAINTIFF'S RECORDINGS OF J. McMAHON "CROSSING THE LINE"**

71.    Plaintiff developed a large mass of recorded documentation of JUDY MCMAHON "crossing the line" and dealing with the administration of the Criminal Term in Richmond County to the detriment of criminal defendants and the administration of justice, including but not limited to the following.

72.    On August 5, 2015, J. MCMAHON approved overtime for wiretaps. Justice Rooney was not consulted or involved.

73.    On August 17, 2015, J. MCMAHON was micromanaging the Eric Garner Grand Jury decision and related release of information.

74.    On August 26, 2015, at 12:05p.m., J. MCMAHON decreed that all requests to approve overtime for criminal judges must go through her. Justice Rooney was not consulted or involved.

75.    On Jan 7, 2016, on the Ramsey Orta case (the man who filmed the Eric Garner incident) J. MCMAHON handled the decision whether to allow video. Justice Rooney was not consulted or involved. At this point, MIKE MCMAHON had been sworn in as Richmond County District Attorney.

76.    On January 13, 2016, ADA Curiale (from MIKE MCMAHON's District Attorney's Office) and Justin Barry (Court Personnel) made a request to keep building open late. J. MCMAHON denied the request. Justice Rooney was not consulted or involved.

77.     On January 14, 2016, Justice Rooney was asked about the Curiale/Barry request to keep the ADA's office in the court building open late and Justice Rooney said he had nothing to do with it. MIKE MCMAHON is the District Attorney at this point.

78.     On January 21, 2016, J. MCMAHON directs the closure of criminal term clerk during lunch to avoid overtime. J. MCMAHON did not consult with Justice Rooney.

79.     On April 19, 2016, a shrill and shrieking J. MCMAHON directs that no more "complex" criminal cases go to Justice Mattei or Justice Ozzi because the District Attorney's Office has complained that Justice Mattei and Justice Ozzi are too "defense oriented". MIKE MCMAHON is the District Attorney at this point.

80.     On April 26, 2016, J. MCMAHON directed PULIZOTTO not to forward a FOIL request concerning the 2015 election for District Attorney that should have gone to the County Clerk's Office but was mistakenly delivered to the Clerk of the Court. PULIZOTTO, following the law, forwarded the request to the County Clerk. MIKE MCMAHON is the District Attorney at this point and was the candidate in the 2015 District Attorney election.

81.     On May 12, 2016, Justice Rooney and Justice Ozzi decide upon a program and format for the Veteran's Court in Richmond County. Minutes later J. MCMAHON says "NO, NO, NO" and tells PULIZOTTO to make it known that Justice Ozzi will not sit on Veteran's Court in "her building". MIKE MCMAHON is the District Attorney at this point, and MIKE MCMAHON made a campaign promise to establish a Veteran's Court in Richmond County.

82.     On May 23, 2016, J. MCMAHON ordered that Justice Ozzi should not be assigned a cell phone warrant and instructed PULIZOTTO to go "pull" the application, but

Judge Ozzi had already signed it. Justice Rooney was not consulted. MIKE MCMAHON is the District Attorney at this point.

83.     On June 16, 2016, J. MCMAHON directed PULIZOTTO to influence Justice Mattei to declare the jury in a criminal case deadlocked so that a mistrial could be declared and the District Attorney's Office could re-try, because the vote was a 10-2 to acquit. Thankfully for the interests of justice, the jury had come back with a verdict that acquitted the defendant before PULIZOTTO took any action. MIKE MCMAHON is the District Attorney at this point.

84.     On July 21, 2016, J. MCMAHON discussed setting up Veteran's Court and involving Justice Mattei. Justice Rooney was not consulted.

85.     On July 29, 2016, J. MCMAHON injects herself into the issue of Justice Ozzi asking for ADAs to get index numbers for Grand Jury matters. Justice Rooney was not consulted. MIKE MCMAHON is the District Attorney at this point.

86.     On August 22, 2016, J. MCMAHON shrieks that Justice Mattei should be sent to "lower criminal court" because of the complaints from the District Attorney's Office about his "anti-prosecutorial side". MIKE MCMAHON is the District Attorney at this point. Justice Mattei, prior to taking the bench, was a career prosecutor for the legendary Bill Murphy as well as for Dan Donovan's district attorney's offices.

87.     On August 29-30, 2016, J. MCMAHON directed Grand Jury staffing. J. MCMAHON continued her demands that Justice Mattei be sent back to "lower criminal court". Justice Rooney was not consulted. MIKE MCMAHON is the District Attorney at this point.

88.     On September 27, 2016, J. MCMAHON speaks with MIKE MCMAHON on speaker phone from chambers about Grand Jury matters. Neither Justice Rooney nor any other criminal term judge was present. MIKE MCMAHON is the District Attorney at this point.

89.     On October 21, 2016, Justice Troia (Part N) complained to J. MCMAHON about all search warrants being assigned to him and not to the judge where indictment was pending. Justice Rooney was not consulted. MIKE MCMAHON is the District Attorney at this point.

90.     On October 25, 2016, J. MCMAHON was complaining on how many venire persons Justice Ozzi and Justice Mattei were using. MIKE MCMAHON is the District Attorney at this point.

91.     On Jan 18, 2017, J. MCMAHON makes all the decisions on criminal Part N staffing issues. Judge Rooney states that J. MCMAHON is too involved – "someone is going to drop a dime". MIKE MCMAHON is the District Attorney at this point.

## J. McMAHON DID NOT WANT A "TROPHY WALL" IN THE RICHMOND COUNT COURTHOUSE TO COMMEMORATE FALLEN COURT OFFICERS; NYSCOA COWTAILS TO J. McMAHON

92.     After their move from 18 Richmond Terrace to the new courthouse at 26 Central Avenue, Plaintiff was asked by several Court Officers if they could hang the memorial photos (a single, modest framed set of three photos) of the three fallen Court Officers from September 11, 2001 in the public lobby as they had done in the old courthouse.

93.     The fallen officers are Capt. William "Harry" Thompson, SCO Thomas Jungreis and SCO Mitchell Wallace.

94.    J. McMAHON adamantly refused this request.

95.    When Plaintiff politely informed her that similar memorial photos hang in the lobby of every other courthouse in the City of New York, **McMAHON shreiked:**

> **"I don't care what other courthouses have!   THIS IS MY COURTHOUSE!!!!   I'M NOT GOING TO HAVE A TROPHY WALL!!!!"**

96.    Apparently, three dead Court Officers who gave their lives for others constitute a "trophy" in the world of JUDITH McMAHON.

97.    Interestingly, QUIRK, who is the President of the NYSCOA did nothing about this indignity.

98.    QUIRK did not want to upset J. McMAHON as QUIRK had parochial political interests that still required consummation between him and the McMAHONs.  Some of those interests included the impending election of his daughter, SUSAN QUIRK, as a Civil Court Judge.

99.    QUIRK also wanted his daughter, who was running in Kings County, assigned to Richmond County.

## THE MARCH 8, 2017 INCIDENT TRIGGERS PLAINTIFF TO BRING DOCUMENTATION TO OCA'S INSPECTOR GENERAL

100.    Plaintiff's belief that additional reporting to additional Authorities was necessary arose on and after March 8, 2017, when an incident in the Richmond County Courthouse involving a juvenile suspect occurred.

101.    Although Plaintiff had been in contact with OCA on a multitude of occasions since the summer of 2015 seeking advice as to how to handle certain situations that arose

and OCA had generally advised Plaintiff to document occurrences, Plaintiff sought to more formally advise OCA as to the extent of Plaintiff's documentation based upon the events of March 8, 2017, at the Richmond County Courthouse.

102.    In the morning of March 8, 2017, a melee occurred amongst several youth spectators in a Criminal Term matter.  The juvenile in question was appropriately placed under arrest; however, what happened thereafter was problematic.

103.    At around 4:00 p.m. – many hours after the emergency had dissipated and order was restored – the juvenile was still inside the lobby holding cell at the courthouse. The holding cell is situated along a busy public corridor that connects to the lobby and is adjacent to two courtrooms assigned to lower criminal court.  The holding cell itself lies behind a non-descript and windowless office door.  Thus, no one from the hallway can peer in at a detained suspect.  There are cameras inside the holding area for officers to monitor any suspect detained inside for security purposes.

104.    The fact that the juvenile was in the holding cell was not problematic in and of itself.  What was inappropriate was the fact that the outer door that separates the holding cell from the public spectators in the busy public corridor was left wide open for apparently hours.  The juvenile was literally on display to the public in his holding cell as though he were a carnival attraction.

105.    As a result of attempts by J. McMAHON and NYSCOA LEADERSHIP to "cover-up" this incident, Plaintiff reported this – and all other acts of corruption and

misconduct – to the Deputy Chief Administrative Judge for all Courts Within New York City[7] and the Inspector General of the New York State Unified Court System.

106.    These acts of corruption and misconduct included J. McMAHON directing Plaintiff to violate the law by *not* reporting the public display of the juvenile incident and the underlying incident (i.e., the juvenile's arrest, as well as the child's truancy that day) to the New York City Administration for Children's Services pursuant to New York Social Services Law § 413.  As a Peace Officer (New York Criminal Procedure Law § 2.10 [21][b]), Plaintiff was **mandated** to report the foregoing as noted.

107.    Plaintiff met with the Deputy Chief Administrative Judge (hereinafter "DCAJ") and her Chief of Staff (Maria Logus, Esq.) in March 2017.  Shortly thereafter, Plaintiff had multiple meetings, as well as email and telephone contacts with the Inspector General[8] and her staff (hereinafter "IG").

108.    It is interesting to note that the first words out of the mouth of DCAJ Fisher were, "*Well, obviously your relationship with Judge McMahon is toxic.  I have some referee positions opening in Kings that you may want.*"  This is consistent with the court administration's *see no evil, hear no evil* playbook.

109.    By early March 2017, the IG and DCAJ were aware of the audio recordings and never directed Plaintiff to cease recording conversations at that time.  In fact, there

---

[7]  At that time, the Deputy Chief Administrative Judge was Hon. Fern Fisher.  Plaintiff met with Judge Fisher and her Chief of Staff (Maria Logus, Esq.).  Judge Fisher subsequently retired and The Honorable George J. Silver was appointed in her stead on or about June 1, 2017.

[8]  Unlike other government entities, the Inspector General of the New York State Unified Court System is <u>not</u> independent of other high-ranking judicial and nonjudicial court officials.

are multiple emails throughout this time period in which Plaintiff elaborated on the recordings.

110.    The IG and DCAJ were also made aware (both verbally and in emails) in early March 2017 that Plaintiff had reported many of the acts of official corruption and misconduct to the UNITED STATES ATTORNEY.

111.    As detailed in the underlying complaint, the IG and her staff inexplicably informed Judge STEPHEN ROONEY that he was the subject of an audio recording.  The recording involved Judge Rooney expressly acknowledging, *inter alia*, Judge McMAHON's acts of misconduct.

112.    On August 1, 2017, Judge McMAHON received a telephone call from the IG in which she was summoned to appear in the IG's office on August 7, 2017.  J. McMAHON had Plaintiff sit with her in chambers during that telephone conversation. Plaintiff was alone with J. McMAHON during that conversation and he heard the entirety of her side of the conversation.

113.    Plaintiff sent an email to high-ranking OCA officials including the OCA Defendants, dated August 1, 2017, in which Plaintiff detailed incontrovertible proof that J. McMAHON had begun a proverbial witch-hunt to ascertain the identity of the person(s) who reported her.

114.    Plaintiff sent the email only minutes after J. McMAHON's telephone conversation with the IG had ended.

115.    The email provided precise detail of what J. McMAHON had said in the telephone conversation.

116.    Despite unquestionable direct evidence that J. McMAHON was intending to retaliate against whomever reported her, Defendants did nothing to address what was to be inevitable retaliation.   They inexplicably and illogically permitted J. McMAHON to remain in her supervisory position until September 8, 2017.

### THE OCA IG "GIVES UP" PLAINTIFF'S IDENTITY TO J. McMAHON

117.    On August 7, 2017, when Judge McMAHON was summoned to the IG, the IG similarly disclosed to her that she was the subject of recordings made by the Plaintiff.

118.    Thereafter, J. McMAHON no longer made regular contact with Plaintiff as she normally would many times throughout a business day.

119.    There was **no** reason - whether *legal* or *logical* – to disclose the existence of the recordings since the IG's investigation did not fall within the ambit of any form of legal process.  There was no discovery or disclosure requirement.

120.    Neither did the IG take statements under oath, notwithstanding the fact that under New York Judiciary Law § 212, the defendant Chief Administrator of the Courts (and his designee) may compel statements under oath.  Again, this was consistent with the *hear no evil, see no evil* approach to state court administration.

121.    Based on the fact that the high-ranking court official defendants were well-aware of JUDITH McMAHON's and NYSCOA LEADERSHIP's penchant for intimidation and threats and overall volatility, the release of the recordings was a reckless, if not an intentional act designed to trigger retaliation against Plaintiff.

**MCMAHON AND THE NYSCOA DEFENDANTS RETALIATE AGAINST PLAINTIFF;**
**THE OCA DEFENDANTS DO NOTHING**

122.    It was shortly thereafter by mid-August 2017 that NYSCOA LEADERSHIP commenced a campaign of retaliation on McMAHON's behalf.

123.    On September 5, 2017, the NYSCOA LEADERSHIP's campaign of retaliation became a public event.

124.    Both McMAHON and NYSCOA LEADERSHIP and all those who acted in concert with NYSCOA LEADERSHIP acted under color of state law.

125.    During the month of August 2017, DCAJ Silver and other high-ranking court official defendants telephoned the Plaintiff and other corroborating witnesses that should any acts of retaliation occur that they were to report them immediately to *them* and *only them*.

126.    Plaintiff sent detailed emails during August 2017 to high-ranking court officials, which describe NYSCOA LEADERSHIP's commencement of retaliatory acts.

127.    These acts were implicit or indirect evidence of retaliation.  Nevertheless, the retaliatory acts that were soon thereafter committed against Plaintiff could not be any more explicit in nature.

128.    At approximately 8:45 a.m. on September 5, 2017, Plaintiff received a text message from New York State Court Officer-Captain B.R., which was sent at the behest of NYSCOA LEADERSHIP.  B.R. inquired as to Plaintiff's location.

129.    Plaintiff arrived at the courthouse at around 8:50 a.m. and observed a veritable mob scene of NYSCOA LEADERSHIP and uniformed Court Officers (and some other union officials) standing in the sally port/driveway of the courthouse.

130.    When Plaintiff attempted to enter the courthouse, he was accosted by NYSCOA LEADERSHIP with a mob of <u>uniformed</u> Court Officers standing behind them.

131.    Members of NYSCOA LEADERSHIP repeatedly referred to Plaintiff as ***a rat*** in front of the mob. One member of NYSCOA LEADERSHIP remarked and that he was going to every court employee to tell them that Plaintiff is ***a rat*** and that he was even going to call the nursing home where Plaintiff's father resides to besmirch him and tell them that Plaintiff is ***a rat***.

132.    Members of NYSCOA LEADERSHIP also publicly stated to Plaintiff that he was going to call the national president of the Fraternal Order of Police (FOP) and tell him that Plaintiff is ***a rat*** and that he should have the New York State Department of Motor Vehicle revoke Plaintiff's FOP organizational license plates.

133.    Captain B.R. – who was both ***on-duty*** and ***in uniform***[9] - proceeded to escort members of NYSCOA LEADERSHIP around all four buildings that encompass Supreme Court, Richmond County.

134.    B.R., as a high-ranking uniformed supervisor - provided members of NYSCOA LEADERSHIP with not merely unfettered access to all areas of the court (including restricted areas), but B.R. also afforded NYSCOA LEADERSHIP with an air of legitimacy and greater color of state authority.  (NYSCOA LEADERSHIP, as a Court Officer himself, was already clearly acting under color of state law even without B.R.'s complicity.)

---

[9]   That these actions occurred under color of state law could not be any clearer and explicit.

135.    At one point after 9:00 that morning, members of NYSCOA LEADERSHIP (with B.R. standing right behind them) was outside the main entrance of the courthouse. Members of NYSCOA LEADERSHIP accosted FORBES IRVINE who is a thirty-year court employee and a corroborating witness with the IG regarding the corruption and misconduct.

136.    When IRVINE asked one member of NYSCOA LEADERSHIP why he did not come to his office and speak with him like a gentleman, said member of NYSCOA LEADERSHIP shouted in public:

> *I did come to your office, but you were locked in Pulizotto's office sucking his fucking cock!*

137.    Plaintiff incorporates by reference the quotations and exhibits evincing the multiple and explicit emails that were contemporaneously sent by him to high-ranking court official defendants about the obscene, public acts of retaliation by NYSCOA LEADERSHIP and others.

138.    At no point on September 5, 2017, did any high-ranking court official come to Richmond County to address NYSCOA LEADERSHIP's outrageous and illegal actions[10].

139.    Later that day on September 5, 2017, J. McMAHON called an emergency judges meeting.  During this meeting, J. MCMAHON lied to the judges in the Richmond

---

[10]  QUIRK is a Peace Officer (New York Criminal Procedure Law § 2.10[21][a]) by virtue of his official position as a New York State Court Officer.  He is also president of the New York State Court Officers' Association.  It is obviously inappropriate (to state the least) for a Peace Officer or Police Officer to openly intimidate witnesses.

County Courthouse stating that Plaintiff had "thousands of hours of recorded conversations" with the judges and everyone and that J. McMAHON would be vindicated.

140.    McMAHON then proceeded to take a vote of "no confidence" on Plaintiff as Chief Clerk and communicated the same to high-ranking OCA officials.

141.    In outrageous fashion, Judge McMAHON and Judge Rooney were still in their supervisory positions through and until the morning of September 8, 2017.  Thus, McMAHON permitted NYSCOA LEADERSHIP to openly retaliate against Plaintiff.

142.    McMAHON's actions during the emergency judges' meeting constituted her own direct form retaliation against Plaintiff.  Plaintiff maintains that the evidence will show that NYSCOA LEADERSHIP and J. McMAHON acted in concert in the commission of all retaliatory acts and the OCA Defendants knew or should have known about the retaliatory acts and yet did nothing.

143.    Conveniently, NYSCOA LEADERSHIP and their minions were nowhere to be found on September 6, 2017 when Defendant MICHAEL MAGLIANO (Chief of the Department of Public Safety for the New York State Unified Court System) came to Richmond County for an extremely brief meeting with Court Officers.

144.    MAGLIANO never met or otherwise contacted Plaintiff on September 5, 2017 or on September 6, 2017.

145.    In the afternoon of September 6, 2017, Plaintiff received a telephone call from MARIA LOGUS, ESQ. (Chief of Staff to the DCAJ).  Ms. LOGUS told Plaintiff to "not ask questions" and to report tomorrow (September 7th) at 1:00 p.m. to Defendant RONALD P. YOUNKINS's office at 25 Beaver Street.  It was at this point that court officials decided to transfer Plaintiff.

146.    The following day of September 7, 2017, Plaintiff arrived at the Richmond County Courthouse around 7:30 a.m. and found members of NYSCOA LEADERSHIP and a NYSCOA union-owned SUV blockading the driveway to the courthouse.

147.    Due to oncoming traffic and other factors, Plaintiff was trapped in his own vehicle, which was halfway into the driveway and halfway into the street.  At that time, one member of NYSCOA LEADERSHIP (with a perverse grin on his countenance) used his cellphone to snap pictures of Plaintiff trapped in his vehicle.

148.    Uniformed court officers, including Court Officer Vincenza Piccirrillo were posted, in uniform and on-duty and looking directly at Plaintiff while members of NYSCOA LEADERSHIP performed these actions, but they did nothing to restrain said members of NYSCOA LEADERSHIP.

149.    After approximately 10 to 15 minutes, Plaintiff telephoned Defendant MAGLIANO.  MAGLIANO said he would call members of NYSCOA LEADERSHIP and direct them to move.  The NYSCOA LEADERSHIP did move.

150.    While Plaintiff was trapped in his own vehicle, members of NYSCOA LEADERSHIP were inflating an enormous rat (exceeding six feet in height) bearing Plaintiff's name and the name of FORBES IRVINE.

151.    The rat was the subject of published photos in various media outlets.

152.    After Plaintiff parked his vehicle and attempted to enter the courthouse, NYSCOA LEADERSHIP accosted and openly threatened Plaintiff.  One member of NYSCOA LEADERSHIP, in sum and substance, exclaimed:

***We're coming to your fucking house this weekend!***

27

153.    Again, Plaintiff contemporaneously reported all of these actions in detail to high-ranking OCA officials in both emails and telephone calls.  As usual, no action was taken by OCA officials.

154.    As indicative of a clear pattern, when Judge MARKS and other high-ranking court officials came to Richmond County to meet with the judges for a 1:00 p.m. meeting on September 7, 2017[11], the members of NYSCOA LEADERSHIP and their minions (and the inflatable rat) were nowhere to be found.

155.    On both September 5th and September 7th, NYSCOA LEADERSHIP and their minions made multiple, defamatory, and other besmirching quotes about Plaintiff to various media outlets, which went hand-in-hand with the published photos of the rat.

156.    Members of NYSCOA LEADERSHIP even committed defamation *per se* by alleging that Plaintiff had committed attorney misconduct.

## THE OCA DEFENDANTS DECIDE TO MOVE PLAINTIFF TO THE "RUBBER ROOM"

157.    When Plaintiff arrived at defendant YOUNKINS's office on September 7, 2017, present were YOUNKINS, LOGUS, defendant JOHN GEORGE (Chief of Administration and lieutenant to the Chief Judge of New York) and BARRY CLARKE (Chief of Operations).

158.    Plaintiff was told that OCA wanted to transfer Plaintiff to OCA headquarters at 25 Beaver Street because the Richmond County judges had no confidence in him due to the audio recordings.

---

[11]  To be clear, this meeting was not the emergency judges' meeting that had occurred earlier that week.

159.    YOUNKINS even said that Plaintiff need not stay the whole day on September 8th, which Plaintiff reasonably understood that they wanted him out of Richmond County immediately.

160.    Defendant JOHN GEORGE even joked after Plaintiff requested during the meeting police protection for the weekend based on members of NYSCOA LEADERSHIP's explicit threats[12] that the NYSCOA mob would come to house and intimidate him, his severely disabled brother and ill and elderly mother.

161.    In a jocular tone, GEORGE said, "*Well, you don't know of any occasion when Dennis Quirk assaulted anyone?*"

162.    GEORGE never provided Plaintiff with any additional security.

163.    In a perverse twist, Court Officers were assigned to escort Plaintiff out of the Richmond County Courthouse building on September 8, 2017, yet none were assigned to protect him from patent acts of retaliation and witness intimidation earlier that week.

164.    Plaintiff had an unblemished record as Chief Clerk and in his nearly fifteen-year (15) history as a court professional with the New York State Unified Court System.

165.    Plaintiff similarly had an unblemished record as an Assistant District Attorney for five years in Kings County.

166.    Presently, Plaintiff's record in the court system is still unblemished. Plaintiff was never accused of any action that could be deemed inappropriate, let alone one that would constitute misconduct of any kind.

---

[12] QUIRK also intimidated and threatened Plaintiff subsequent to the week of September 5, 2017 by causing communications via text message and cellular voice call to Plaintiff.

167.    Nevertheless, after being the public subject of retaliation – complete with inflated rat bearing Plaintiff's name – it was Plaintiff who was transferred to a position at OCA headquarters that is in effect a blatant demotion.

168.    Although Plaintiff was able to retain his title, YOUNKINS made it clear that Plaintiff is not to publicly use his title.

169.    YOUNKINS said that if Plaintiff had to use a title, Plaintiff should use the *de facto* title of *Special Projects Counsel*.

170.    Further, Plaintiff was relegated to a windowless office that is alongside a high-traffic corridor right where employees enter from the main elevator bank and swipe-in.

171.    The OCA Defendants have effectively placed Plaintiff in a "rubber room."

172.    Critically, Plaintiff is hardly assigned any work.  What little work is assigned to Plaintiff involves correspondence of general inquiries from the public to which Plaintiff is not permitted to sign his own name and over which Plaintiff lacks editorial control.

173.    Further, all access to databases and even to the executive floor were rescinded.  To describe this as merely a step down in stature from Chief Clerk[13] as the highest-ranking nonjudicial officer in Richmond County is a gross understatement.

174.    Moreover, since Plaintiff has a brother with Cerebral Palsy and an elderly and ill mother who both reside in his home in Staten Island, it is a hardship[14] for Plaintiff to now be reassigned out of Staten Island into Manhattan.

_____

[13]  As Chief Clerk, one has responsibility over all uniformed and non-uniformed personnel, budgets, facilities, policy decisions, etc.
[14]  Plaintiff serves as a caregiver to both his brother and mother, and also acts as the responsible party in conjunction with all aspects of his father's care in the nursing home. The nursing home is also located in Staten Island.

**DEFENDENTS HAVE RETALIATED, ACTED UNDER STATE LAW, AND MANIPULATED THE SYSTEM OF JUSTICE THAT INDIVIDUALLY AND COLLECTIVELY RISE TO THE LEVEL OF GRAVE PUBLIC CONCERN**

175.    It is beyond cavil that the actions of all Defendants constitute direct evidence of retaliation under color of state law for Plaintiff having exercised specific federal civil rights in violation of, *inter alia*, 42 USC § 1983.

176.    Under the Petition Clause of the First Amendment to the United States Constitution, Plaintiff has the right to report acts of official corruption and misconduct of public concern to the United States Attorney, to court officials, and to the Authorities.

177.    Plaintiff reported these acts in his capacity as a public citizen, as an attorney and as a court administrator.

178.    It is similarly axiomatic that, *inter alia*, the acts of a supervising judge acting under color of state law in attempting to tamper with jury deliberations and exercising other corrupt and unethical influence and involvement in criminal matters to aid her District Attorney husband, as well as the mistreatment of a juvenile suspect and illegal directives to ***not*** report such mistreatment in blatant violation of state law, as well as a conspiracy to violate the civil rights of an African-American employee for explicit personal and political gain all independently and collectively rise to the level of ***public concern*** and not a "mere private grievance."

**NONE OF THE DEFENDANTS HAVE BEEN OFFICIALLY REPRIMANDED IN ANY MEANINGFUL WAY, SHAPE, OR FORM**

179.    Judge McMAHON was later transferred to New York County.

180.    No one – not Judge McMAHON nor NYSCOA LEADERSHIP nor the OCA Defendants – were subject to disciplinary action for the outrageous acts of retaliation that

31

had occurred nor for an unwillingness to address the hostile work environment that the Defendants had created.

181.    Further, all Court Officers who acted in concert with NYSCOA LEADERSHIP were permitted to remain in Richmond County.

182.    Those Court Officers' actions were grossly insubordinate, illegal, retaliatory and also constituted explicit witness intimidation.

183.    All of these actions were committed under color of state law and in violation of specific federal civil rights of Plaintiff.

184.    The NYSCOA LEADERSHIP's actions were an attempt at not only witness intimidation, but the subornation of perjury in the related state court matter, whereby QUIRK attempted to procure a false affidavit from non-party / material witness FORBES IRVINE.

## CLAIMS FOR RELIEF
## CLAIM ONE
## Violation of 42 USC § 1983
## ALL DEFENDANTS

185.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

186.    In violation of 42 USC § 1983, on or about September 5, 2017, defendants JUDGE MCMAHON, YOUNKINS, GEORGE, MAGLIANO, NEW YORK STATE COURT OFFICERS' ASSOCIATION, KANTOR, and MIKOS while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *INTENTIONALLY* retaliate against Plaintiff.

187.    The Defendants intentionally retaliated against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

188.    The Defendants intentionally retaliated against Plaintiff by affirmatively and passively permitting KANTOR, MIKOS, and other New York State Court Officers all of whom are members of the New York State Court Officers' Association ("NYSCOA"), under their command to accost, coerce, harass, impugn, intimidate, threaten and unlawfully restrain Plaintiff at 26 Central Avenue, County of Richmond, City and State of New York.

189.    The Defendants intentionally retaliated against Plaintiff in that said defendants did not attempt to restrain KANTOR, MIKOS, and other New York State Court Officers, (members of the NYSCOA), under their command because Plaintiff did report as a citizen, official corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON, and others to the Authorities, including the UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK.

190.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

191.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM TWO

## Violation of 42 USC § 1983
## ALL DEFENDANTS

192.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

193.    In violation of 42 USC § 1983, on or about September 5, 2017, defendants JUDGE MCMAHON, YOUNKINS, GEORGE, MAGLIANO, NEW YORK STATE COURT OFFICERS' ASSOCIATION, KANTOR, and MIKOS while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *INTENTIONALLY* retaliate against Plaintiff.

194.    The Defendants intentionally retaliated against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

195.    The Defendants intentionally retaliated against Plaintiff by affirmatively and passively permitting KANTOR, MIKOS, and other New York State Court Officers, all members of the NYSCOA, under their command to accost, coerce, harass, impugn, intimidate, threaten and unlawfully restrain Plaintiff at 26 Central Avenue, County of Richmond, City and State of New York.

196.    The Defendants intentionally retaliated against Plaintiff in that said defendants did not attempt to restrain KANTOR, MIKOS, and New York State Court Officers, (members of the NYSCOA), under their command because Plaintiff did report as a citizen, attorney and court administrator, official corruption and misconduct of public

concern committed by defendant JUDITH N. McMAHON, and others to the Authorities, including to OFFICIALS WITHIN THE NEW YORK STATE UNIFIED COURT SYSTEM, including, but not limited to, THE INSPECTOR GENERAL OF THE NEW YORK STATE UNIFIED COURT SYSTEM.

197.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

198.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM THREE

### Violation of 42 USC § 1983
### DEFENDANTS YOUNKINS AND GEORGE

199.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

200.    In violation of 42 USC § 1983, on or about September 5, 2017, defendants YOUNKINS and GEORGE, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *THROUGH GROSS NEGLIGENCE AND RECKLESSNESS,* cause retaliatory acts against Plaintiff.

201.    The actions and / or omissions of said Defendants as against Plaintiff were based upon Plaintiff having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION,

including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

202.    Said Defendants, by having previously released directly and indirectly to defendant JUDITH N. McMAHON and others, identifying information and other key information provided by Plaintiff and for which said defendants had no legal obligation to disclose and that it was reasonably foreseeable that NYSCOA LEADERSHIP, JUDITH N. McMAHON, and members of the NYSCOA and others would engage in retaliatory acts against Plaintiff.

203.    That it was reasonably foreseeable that NYSCOA LEADERSHIP, JUDITH N. McMAHON, and members of the NYSCOA and others would engage in retaliatory acts against Plaintiff and that such acts would be in violation of Plaintiff's rights under federal law because Plaintiff did report as a citizen, official corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON and others to the Authorities including but not limited to UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK and further that the above-named defendants had a duty to protect Plaintiff from retaliatory acts.

204.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

205.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM FOUR

### Violation of 42 USC § 1983
### DEFENDANTS YOUNKINS AND GEORGE

206.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

207.    In violation of 42 USC § 1983, on or about September 5, 2017, defendants YOUNKINS and GEORGE, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *THROUGH GROSS NEGLIGENCE AND RECKLESSNESS,* cause retaliatory acts against Plaintiff.

208.    The actions and / or omissions of said Defendants as against Plaintiff were based upon Plaintiff having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

209.    Said Defendants, by having previously released directly and indirectly to defendant JUDITH N. McMAHON and others, identifying information and other key information provided by Plaintiff and for which said defendants had no legal obligation to disclose.

210.    That it was reasonably foreseeable that NYSCOA LEADERSHIP, JUDITH N. McMAHON, and members of the NYSCOA and others would engage in retaliatory acts against Plaintiff and that such acts would be in violation of Plaintiff's rights under federal law because Plaintiff did report as a citizen, attorney and court administrator, official

37

corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON, and others to the Authorities, including to OFFICIALS WITHIN THE NEW YORK STATE UNIFIED COURT SYSTEM, including, but not limited to, THE INSPECTOR GENERAL OF THE NEW YORK STATE UNIFIED COURT SYSTEM.

211. Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

212. Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM FIVE

### Violation of 42 USC § 1983
### DEFENDANTS YOUNKINS AND GEORGE

213. Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

214. In violation of 42 USC § 1983, on or about September 5, 2017, Defendants YOUNKINS and GEORGE, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *NEGLIGENTLY* cause retaliatory acts against Plaintiff.

215. The actions and / or omissions of said Defendants as against Plaintiff were based upon Plaintiff having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION,

including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

216.    Said Defendants, by having previously released directly and indirectly to defendant JUDITH N. McMAHON and others, identifying information and other key information provided by Plaintiff and for which said defendants had no legal obligation to disclose and that it was reasonably foreseeable that NYSCOA LEADERSHIP, JUDITH N. McMAHON, and members of the NYSCOA and others would engage in retaliatory acts against Plaintiff.

217.    That such acts would be in violation of Plaintiff's rights under federal law because Plaintiff did report as a citizen, official corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON and others to the UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK and further that the above-named defendants had a duty to protect Plaintiff from retaliatory acts.

218.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

219.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM SIX

### Violation of 42 USC § 1983

### DEFENDANTS YOUNKINS AND GEORGE

220.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

221.    In violation of 42 USC § 1983, on or about September 5, 2017, Defendants YOUNKINS and GEORGE, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *NEGLIGENTLY* cause retaliatory acts against Plaintiff.

222.    The actions and / or omissions of said Defendants as against Plaintiff were based upon Plaintiff having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

223.    Said Defendants, by having previously released directly and indirectly to defendant JUDITH N. McMAHON and others, identifying information and other key information provided by Plaintiff and for which said defendants had no legal obligation to disclose.

224.    That it was reasonably foreseeable that NYSCOA LEADERSHIP, JUDITH N. McMAHON, and members of the NYSCOA and others would engage in retaliatory acts against Plaintiff and that such acts would be in violation of Plaintiff's rights under federal law because Plaintiff did report as a citizen, attorney and court administrator, official corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON, and others to the Authorities, including to OFFICIALS WITHIN THE NEW YORK STATE UNIFIED COURT SYSTEM, including, but not limited to, THE INSPECTOR GENERAL OF THE NEW YORK STATE UNIFIED COURT SYSTEM.

225.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

226.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM SEVEN
## Violation of 42 USC § 1983
## ALL DEFENDANTS

227.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

228.    In violation of 42 USC § 1983, on or about September 7, 2017, defendants JUDGE MCMAHON, YOUNKINS, GEORGE, MAGLIANO, NEW YORK STATE COURT OFFICERS' ASSOCIATION, KANTOR, and MIKOS while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *INTENTIONALLY* retaliate against Plaintiff.

229.    The Defendants intentionally retaliated against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

230.    The Defendants intentionally retaliated against Plaintiff by affirmatively and passively permitting KANTOR, MIKOS, and other New York State Court Officers, all of whom are members of the New York State Court Officers' Association ("NYSCOA"), under their command to accost, coerce, harass, impugn, intimidate, threaten and

41

unlawfully restrain Plaintiff at 26 Central Avenue, County of Richmond, City and State of New York.

231.    The Defendants intentionally retaliated against Plaintiff in that said defendants did not attempt to restrain KANTOR, MIKOS, and other New York State Court Officers under their command because Plaintiff did report as a citizen, official corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON, and others to the Authorities, including the UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK.

232.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

233.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM EIGHT

### Violation of 42 USC § 1983
### ALL DEFENDANTS

234.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

235.    In violation of 42 USC § 1983, on or about September 7, 2017, defendants JUDGE MCMAHON, YOUNKINS, GEORGE, MAGLIANO, NEW YORK STATE COURT OFFICERS' ASSOCIATION, KANTOR, and MIKOS while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in

the above caption, did, acting both individually and in concert with one another and with others, *INTENTIONALLY* retaliate against Plaintiff.

236.    The Defendants intentionally retaliated against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

237.    The Defendants intentionally retaliated against Plaintiff by affirmatively and passively permitting KANTOR, MIKOS, and other New York State Court Officers, all members of the NYSCOA, under their command to accost, coerce, harass, impugn, intimidate, threaten and unlawfully restrain Plaintiff at 26 Central Avenue, County of Richmond, City and State of New York.

238.    The Defendants intentionally retaliated against Plaintiff in that said defendants did not attempt to restrain KANTOR, MIKOS, and New York State Court Officers, (members of the NYSCOA), under their command because Plaintiff did report as a citizen, attorney and court administrator, official corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON, and others to the Authorities, including to OFFICIALS WITHIN THE NEW YORK STATE UNIFIED COURT SYSTEM, including, but not limited to, THE INSPECTOR GENERAL OF THE NEW YORK STATE UNIFIED COURT SYSTEM.

239.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

240.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM NINE

### Violation of 42 USC § 1983
### DEFENDANTS YOUNKINS AND GEORGE

241.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

242.    In violation of 42 USC § 1983, on or about September 7, 2017, defendants YOUNKINS and GEORGE, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *THROUGH GROSS NEGLIGENCE AND RECKLESSNESS,* cause retaliatory acts against Plaintiff

243.    The Defendants retaliated against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES by having previously released directly and indirectly to defendant JUDITH N. McMAHON and others, identifying information and other key information provided by Plaintiff and for which said defendants had no legal obligation to disclose.

244.    That it was reasonably foreseeable that NYSCOA LEADERSHIP, JUDITH N. McMAHON, and members of the NYSCOA and others would engage in retaliatory acts

against Plaintiff and that such acts would be in violation of Plaintiff's rights under federal law because Plaintiff did report as a citizen, official corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON and others to the UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK.

245.   That the above-named Defendants had a duty to protect Plaintiff from retaliatory acts.

246.   Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

247.   Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM TEN

### Violation of 42 USC § 1983
### DEFENDANTS YOUNKINS AND GEORGE

248.   Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

249.   In violation of 42 USC § 1983, on or about September 7, 2017, defendants YOUNKINS and GEORGE, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *THROUGH GROSS NEGLIGENCE AND RECKLESSNESS,* cause retaliatory acts against Plaintiff.

250.    The Defendants retaliated against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES by having previously released directly and indirectly to defendant JUDITH N. McMAHON and others, identifying information and other key information provided by Plaintiff and for which said defendants had no legal obligation to disclose.

251.    That it was reasonably foreseeable that NYSCOA LEADERSHIP, JUDITH N. McMAHON, and members of the NYSCOA and others would engage in retaliatory acts against Plaintiff and that such acts would be in violation of Plaintiff's rights under federal law because Plaintiff did report as a citizen, attorney and court administrator, official corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON, and others to the Authorities, including to OFFICIALS WITHIN THE NEW YORK STATE UNIFIED COURT SYSTEM, including, but not limited to, THE INSPECTOR GENERAL OF THE NEW YORK STATE UNIFIED COURT SYSTEM.

252.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff. Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM ELEVEN

### Violation of 42 USC § 1983
### DEFENDANTS YOUNKINS AND GEORGE

253.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

254.    In violation of 42 USC § 1983, on or about September 7, 2017, defendants YOUNKINS and GEORGE, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *NEGLIGENTLY* cause retaliatory acts against Plaintiff.

255.    That Defendants retaliated as against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

256.    That by having previously released directly and indirectly to defendant JUDITH N. McMAHON and others, identifying information and other key information provided by Plaintiff and for which said defendants had no legal obligation to disclose and that it was reasonably foreseeable that NYSCOA LEADERSHIP, JUDITH N. McMAHON, and members of the NYSCOA and others would engage in retaliatory acts against Plaintiff.

257.    That such acts would be in violation of Plaintiff's rights under federal law because Plaintiff did report as a citizen, official corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON and others to the UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK.

258.    That the above-named Defendants had a duty to protect Plaintiff from retaliatory acts.

259.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

260.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM TWELVE

## Violation of 42 USC § 1983
## DEFENDANTS YOUNKINS AND GEORGE

261.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

262.    In violation of 42 USC § 1983, on or about September 7, 2017, defendants YOUNKINS and GEORGE, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *NEGLIGENTLY* cause retaliatory acts against Plaintiff.

263.    That Defendants retaliated as against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

264.    That by having previously released directly and indirectly to defendant JUDITH N. McMAHON and others, identifying information and other key information provided by Plaintiff and for which said defendants had no legal obligation to disclose and that it was reasonably foreseeable that NYSCOA LEADERSHIP, JUDITH N. McMAHON, and members of the NYSCOA and others would engage in retaliatory acts against Plaintiff.

265.   That such acts would be in violation of Plaintiff's rights under federal law because Plaintiff did report as a citizen, attorney and court administrator, official corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON, and others to the Authorities, including to OFFICIALS WITHIN THE NEW YORK STATE UNIFIED COURT SYSTEM, including, but not limited to, THE INSPECTOR GENERAL OF THE NEW YORK STATE UNIFIED COURT SYSTEM.

266.   Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

267.   Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM THIRTEEN

## Violation of 42 USC § 1983
## DEFENDANTS YOUNKINS, GEORGE AND MCMAHON

268.   Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

269.   In violation of 42 USC § 1983, on or about September 11, 2017, defendants JUDGE MCMAHON, YOUNKINS and GEORGE, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *INTENTIONALLY* retaliate against Plaintiff.

270.   The Defendants intentionally retaliated against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments

of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

271.    The Defendants intentionally retaliated against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES and PLAINTIFF'S RIGHTS to PROCEDURAL AND SUBSTANTIVE DUE PROCESS AND PLAINTIFF'S PROPERTY INTEREST IN HIS POSITION OF CHIEF CLERK by *TAKING THE ADVERSE EMPLOYMENT ACTION OF TRANSFERRING PLAINTIFF FROM RICHMOND COUNTY AS CHIEF CLERK OF SUPREME COURT TO NEW YORK COUNTY IN A POSITION WITH SUBSTANTIALLY DIMINISHED DUTIES, RESPONSIBILITIES AND STATURE* because Plaintiff did report as a citizen, official corruption and misconduct of public concern committed by NYSCOA LEADERSHIP, JUDITH N. McMAHON, and others to the UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK.

272.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

273.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

**CLAIM FOURTEEN**

**Violation of 42 USC § 1983**

**DEFENDANTS YOUNKINS, GEORGE AND MCMAHON**

274.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

275.    In violation of 42 USC § 1983, on or about September 11, 2017, defendants JUDGE MCMAHON, YOUNKINS and GEORGE, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *INTENTIONALLY* retaliate against Plaintiff.

276.    The Defendants intentionally retaliated against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

277.    The Defendants intentionally retaliated against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES and PLAINTIFF'S RIGHTS to PROCEDURAL AND SUBSTANTIVE DUE PROCESS AND PLAINTIFF'S PROPERTY INTEREST IN HIS POSITION OF CHIEF CLERK by *TAKING THE ADVERSE EMPLOYMENT ACTION OF TRANSFERRING PLAINTIFF FROM RICHMOND COUNTY AS CHIEF CLERK OF SUPREME COURT TO NEW YORK COUNTY IN A POSITION WITH SUBSTANTIALLY DIMINISHED DUTIES, RESPONSIBILITIES AND STATURE* because Plaintiff did report as a citizen, attorney and court administrator,

51

official corruption and misconduct of public concern committed by defendant JUDITH N. McMAHON, and others to the Authorities, including to OFFICIALS WITHIN THE NEW YORK STATE UNIFIED COURT SYSTEM, including, but not limited to, THE INSPECTOR GENERAL OF THE NEW YORK STATE UNIFIED COURT SYSTEM.

278.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

279.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM FIFTEEN

### Violation of 42 USC § 1983
### DEFENDANTS YOUNKINS and NYSCOA

280.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows.

281.    In violation of 42 USC § 1983, on or about November 30, 2015, defendant YOUNKINS, while acting under color of state law, individually and personally, and acting in his respective official capacity did violate Plaintiff's rights under the FOURTH and FOURTEENTH amendments to the United States Constitution including, but not limited to the right against UNLAWFUL SEIZURES OF ONE'S PERSON in that despite having been placed on notice by Plaintiff on or about September 4, 2015 of allegations of official corruption and misconduct of public concern.

282.    That coercion and threats by defendant JUDITH N. McMAHON, NYSCOA LEADERSHIP and others, defendant YOUNKINS DID RECKLESSLY AND THROUGH

GROSS NEGLIGENCE, by failing to take official action to investigate Plaintiff's report and other RECKLESS AND GROSSLY NEGLIGENT abdications of his official duties and responsibilities, thereby facilitated the UNLAWFUL SEIZURE OF PLAINTIFF'S PERSON by defendant JUDITH N. McMAHON, who, while acting in concert with NYSCOA LEADERSHIP, DID DIRECT AND ORDER, UNDER COLOR OF STATE LAW, PLAINTIFF TO APPEAR AT THE OFFICE OF DEFENDANT NEW YORK STATE COURT OFFICERS' ASSOCIATION AT 321 BROADWAY, NEW YORK, NEW YORK ON NOVEMBER 30, 2015 AND AT WHICH TIME NYSCOA LEADERSHIP DID THREATEN PLAINTIFF WITH ADVERSE EMPLOYMENT ACTION IN THAT HE WOULD BE TERMINATED FROM HIS POSITION AS CHIEF CLERK OF SUPREME COURT, RICHMOND COUNTY AND THAT NYSCOA LEADERSHIP AND DEFENDANT JUDITH MCMAHON WOULD EXPOSE A FALSE SECRET ALLEGING PLAINTIFF HAVING COMMITTED A CIVIL FORM OF SEXUAL MISCONDUCT WITH ONE OR MORE SUBORDINATE EMPLOYEES AND KNOWING THAT BY EXPOSING THE SAME IT WOULD SUBJECT PLAINTIFF TO CONTEMPT, HATRED OR RIDICULE FOR PURPOSES OF COMPELLING PLAINTIFF TO VIOLATE HIS DUTY AS A PUBLIC SERVANT AND FURTHER THAT DEFENDANT YOUNKINS HAD A DUTY TO PROTECT PLAINTIFF FROM RETALIATION AND TO SAFEGUARD PLAINTIFF'S FEDERAL CIVIL RIGHTS.

283.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

284.  Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM SIXTEEN

### Violation of 42 USC § 1983
### DEFENDANTS YOUNKINS and GEORGE

285.  Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

286.  In violation of 42 USC § 1983, on or about and between August 1, 2017 and September 8, 2017, defendants YOUNKINS and GEORGE, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting both individually and in concert with one another and with others, *did, THROUGH GROSS NEGLIGENCE AND RECKLESSNESS* and after having been placed on explicit notice by email, dated August 1, 2017 and by other communications that defendant JUDITH N. McMAHON and NYSCOA LEADERSHIP were acting under color of state law with explicit intent to retaliate against the person or persons who reported their official corruption and misconduct of public concern to Authorities, including the UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK and THE INSPECTOR GENERAL OF THE NEW YORK STATE UNIFIED COURT SYSTEM,

287.  That Defendants caused retaliatory acts against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO

PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES and by having previously released directly and indirectly to defendant JUDITH N. McMAHON and to NYSCOA LEADERSHIP identifying information and other key information provided by Plaintiff and for which defendants YOUNKINS and GEORGE had no legal obligation to disclose.

288.    That it was reasonably foreseeable that NYSCOA LEADERSHIP and defendant JUDITH N. McMAHON and others would engage in retaliatory acts against Plaintiff and that such acts would be in violation of Plaintiff's aforesaid rights under federal law as set forth aboveThe Defendants intentionally retaliated against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

289.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

290.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM SEVENTEEN
## Violation of 42 USC § 1983
## DEFENDANT JUDITH McMAHON

291.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

292.    In violation of 42 USC § 1983, on or about November 30, 2015, defendant JUDITH N. McMAHON while acting under color of state law, individually and personally,

and acting in her respective official capacity as set forth in the above caption, did, acting individually and in concert with NYSCOA LEADERSHIP and others, *INTENTIONALLY* violate Plaintiff's privileges and rights under the FOURTH and FOURTEENTH Amendments to THE UNITED STATES CONSTITUTION by having directed and ordered UNDER COLOR OF STATE LAW, PLAINTIFF TO APPEAR AT the OFFICE OF THE NEW YORK STATE COURT OFFICERS' ASSOCATION at 321 BROADWAY, NEW YORK, NEW YORK and, at which time, NYSCOA LEADERSHIP did threaten Plaintiff with adverse employment action in that Plaintiff would be terminated from his position as Chief Clerk of Supreme Court, Richmond County and that QUIRK and McMAHON would expose a false secret alleging Plaintiff having committed a civil form of sexual misconduct with one or more subordinate court employees and knowing that by exposing the same it would subject Plaintiff to contempt, hatred and ridicule for purposes of compelling Plaintiff to violate his duty as a public servant and that these actions would constitute a felony offense pursuant to New York Penal Law § 135.65 (2)(C).

293.    That the aforesaid conduct of defendant McMAHON and QUIRK did constitute an unlawful seizure of Plaintiff's person in violation of Plaintiff's federal civil rights under the Fourth and Fourteenth Amendments to the United States Constitution.

294.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

295.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM EIGHTEEN

## Violation of 42 USC § 1983
## DEFENDANT JUDITH McMAHON

296.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

297.    In violation of 42 USC § 1983, on or about November 30, 2015, defendant JUDITH N. McMAHON while acting under color of state law, individually and personally, and acting in her respective official capacity as set forth in the above caption, did, acting individually and in concert with NYSCOA LEADERSHIP and others, *INTENTIONALLY* violate Plaintiff's privileges and rights under the FIRST and FOURTEENTH Amendments to THE UNITED STATES CONSTITUTION by having directed and ordered UNDER COLOR OF STATE LAW, PLAINTIFF TO APPEAR AT the OFFICE OF THE NEW YORK STATE COURT OFFICERS' ASSOCATION at 321 BROADWAY, NEW YORK, NEW YORK and, at which time, NYSCOA LEADERSHIP did threaten Plaintiff with adverse employment action in that Plaintiff would be terminated from his position as Chief Clerk of Supreme Court, Richmond County and that QUIRK and McMAHON would expose a false secret alleging Plaintiff having committed a civil form of sexual misconduct with one or more subordinate court employees and knowing that by exposing the same it would subject Plaintiff to contempt, hatred and ridicule for purposes of compelling Plaintiff to violate his duty as a public servant and that these actions would constitute a felony offense pursuant to New York Penal Law § 135.65 (2)(C)  and that the aforesaid conduct of defendant McMAHON and QUIRK did constitute an unlawful seizure of Plaintiff's person in violation of Plaintiff's federal civil rights under the FOURTH and FOURTEENTH Amendments to the United States Constitution and that defendant McMAHON and

QUIRK committed these actions because Plaintiff had previously stated to defendant JUDITH McMAHON that JUDITH McMAHON would have to transfer out of Richmond County due to the election of her husband, MICHAEL E. McMAHON, as District Attorney of Richmond County.

298.    That this was further in violation of Plaintiff's rights under the SPEECH CLAUSE of the First Amendment of the United States Constitution.

299.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

300.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM NINETEEN

## Violation of 42 USC § 1983
## ALL DEFENDANTS

301.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

302.    In violation of 42 USC § 1983, on or about September 7, 2017, all above defendants, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting individually and in concert with one another and others, including NYSCOA LEADERSHIP, *INTENTIONALLY* violate Plaintiff's privileges and rights under the FIRST, FOURTH and FOURTEENTH Amendments to THE UNITED STATES CONSTITUTION

by illegally seizing Plaintiff's person in violation of Plaintiff's right to be free from unlawful seizure of his person.

303.    That defendants by their actions and omissions blockaded Plaintiff's access to the courthouse garage in that when Plaintiff attempted to enter the driveway of the courthouse at 26 Central Avenue, County of Richmond, NYSCOA LEADERSHIP – while acting in concert with other New York State Court Officers – QUIRK parked his sports utility vehicle that is owned by defendant New York State Court Officers' Association across the driveway entrance when Plaintiff attempted to enter, thereby forcing Plaintiff and Plaintiff's vehicle to remain partly in the street an unable to reverse due to the oncoming traffic and at which time QUIRK walked around Plaintiff's vehicle while Plaintiff was trapped inside and that QUIRK did accost, harass, intimidate and threaten Plaintiff in that QUIRK snapped photographs of Plaintiff with QUIRK's cellphone in front of other New York State Court Officers.

304.    That some of said New York State Court Officers were inflating a large rubber rat that stood in excess of six feet in height and did bear Plaintiff's name and the name of FORBES IRVINE and that said actions caused Plaintiff to become annoyed and alarmed and placed in fear of physical injury and that defendants committed these acts in retaliation for Plaintiff having reported, as a citizen, attorney and court administrator, acts of official corruption and misconduct having been committed by defendant McMAHON and others to Authorities, including the United States Attorney for the Southern District of New York and to the Inspector General of the New York State Unified Court System.

305.    That the aforesaid actions violated Plaintiff's federal civil rights to be free from unlawful seizures of his person and to Petition government for a redress of grievances in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution.

306.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

307.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM TWENTY

## Violation of 42 USC § 1983
## ALL DEFENDANTS

308.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

309.    In violation of 42 USC § 1983, on or about September 5, 2017, all above defendants, while acting under color of state law, individually and personally, and acting in their respective official capacities as set forth in the above caption, did, acting individually and in concert with one another and others, including NYSCOA LEADERSHIP, *INTENTIONALLY* violate Plaintiff's privileges and rights under the FIRST, FOURTH and FOURTEENTH Amendments to THE UNITED STATES CONSTITUTION.

310.    That NYSCOA LEADERSHIP stating in sum and substance that QUIRK was going to use his authority under color of state law and as President of the New York State Court Officers' Association to contact the national president of the Fraternal Order

of Police to influence said president to revoke Plaintiff's membership in that organization and to cause the revocation of those organizational license plates issued to Plaintiff by the New York State Department of Motor Vehicles under license by the Fraternal Order of Police.

311.    That NYSCOA LEADERSHIP repeatedly stated in sum and substance that Plaintiff is a rat for having reported official corruption and misconduct of public concern to the Authorities, including the United States Attorney for the Southern District of New York and the Inspector General of the New York State Unified Court System.

312.    That all of the above actions were in violation of Plaintiff's rights to privacy and procedural and substantive due process and Plaintiff's rights to Petition government for a redress of grievances under the First and Fourteenth Amendments to the United States Constitution.

313.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

314.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM TWENTY-ONE
## Violation of 42 USC § 1985
## DEFENDANT McMAHON

315.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

316.    In violation of 42 USC § 1985, on or about and between February 8, 2016 and February 1, 2017, defendant JUDITH N. McMAHON, individually and personally and

in her above-cited official capacity, while acting in concert with others did, while acting under color of state law, conspire to deprive directly and indirectly a nonjudicial court employee (initials SV) of the equal protection of the laws, equal privileges and immunities under the laws of the United States and the State of New York based on SV's race and gender as an African-American female and that on or about February 8, 2016 and again in July 2016 and on other occasions within the aforesaid time period, SV did report to Plaintiff in Plaintiff's capacity as Chief Clerk of Supreme Court, Richmond County, substantial allegations of discrimination based on race and gender having been committed against SV in the course of SV's employment.

317.    That Defendant McMAHON, while acting under color of state law, did illegally and improperly direct Plaintiff to refrain from investigating SV's allegations of discrimination based on race and gender within SV's employment as a court employee and that defendant McMAHON, while acting in concert with others, did so for explicit personal and political benefits to defendant McMAHON and others and that as Chief Clerk, Plaintiff had a "concrete interest"  and an affirmative duty to investigate and otherwise appropriately address all complaints of illegal discrimination based on race and gender.

318.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

319.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

**CLAIM TWENTY-TWO**

**Violation of 42 USC § 1983**
**DEFENDANT McMAHON**

320.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

321.    In violation of 42 USC § 1983, on or about and between February 8, 2016 and February 1, 2017, defendant JUDITH N. McMAHON, individually and personally and in her above-cited official capacity, while acting in concert with others did, while acting under color of state law, did deprive directly and indirectly a nonjudicial court employee (initials SV) of the equal protection of the laws, equal privileges and immunities under the laws of the United States and the State of New York based on SV's race and gender as an African-American female and that on or about February 8, 2016 and again in July 2016 and on other occasions within the aforesaid time period, SV did report to Plaintiff in Plaintiff's capacity as Chief Clerk of Supreme Court, Richmond County, substantial allegations of discrimination based on race and gender having been committed against SV in the course of SV's employment and that defendant McMAHON, while acting under color of state law, did illegally and improperly direct Plaintiff to refrain from investigating SV's allegations of discrimination based on race and gender within SV's employment as a court employee and that defendant McMAHON, while acting in concert with others, did so for explicit personal and political benefits to defendant McMAHON and others and that as Chief Clerk, Plaintiff had a "concrete interest"  and an affirmative duty to investigate and otherwise appropriately address all complaints of illegal discrimination based on race and gender.

322.   That defendant McMAHON, while acting under color of state law, individually and in concert with others, did retaliate against Plaintiff for having reported these and other allegations of official corruption and misconduct to the Authorities, including the United States Attorney for the Southern District of New York and the Inspector General of the New York State Unified Court System.

323.   Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

324.   Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM TWENTY-THREE

### Violation of 42 USC § 1983
### DEFENDANT MAGLIANO

325.   Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

326.   In violation of 42 USC § 1983, on or about and between September 5, 2017 and September 8, 2017 at 26 Central Avenue, Supreme Court, Richmond County in the County of Richmond, City and State of New York, Defendant MICHAEL MAGLIANO, while acting under color of state law, individually and personally, and acting in his capacity as CHIEF OF THE DEPARTMENT OF PUBLIC SAFETY OF THE NEW YORK STATE UNIFIED COURT SYSTEM, did, acting individually and in concert with others, *INTENTIONALLY* retaliate against Plaintiff for having exercised his privileges and rights enumerated under the FIRST and FOURTEENTH Amendments of THE UNITED

STATES CONSTITUTION, including Plaintiff's RIGHT TO PETITION GOVERNMENT FOR A REDRESS OF GRIEVANCES.

327.    That the defendant MAGLIANO, had an affirmative duty, by virtue of his position and oath to uphold the Constitution and laws of the United States, to have intervened and prevented NYSCOA LEADERSHIP and other New York State Court Officers from committing illegal and otherwise improper actions against Plaintiff for the express purpose of retaliating against Plaintiff for Plaintiff having reported, as a citizen, official corruption and misconduct of public concern to the Authorities, including the United States Attorney for the Southern District of New York and the Inspector General of the New York State Unified Court System.

328.    That the Defendant MAGLIANO intentionally abdicated his duties and permitted the aforesaid retaliatory actions to be committed against Plaintiff.

329.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

330.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM TWENTY-FOUR

### Violation of 42 USC § 1983
### DEFENDANT McMAHON

331.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

332.    In violation of 42 USC § 1983, on or about and between June 1, 2015 and August 1, 2015 in the County of Richmond, City and State of New York, defendant JUDITH N. McMAHON, individually and personally, and in her official capacity as set forth in the above caption, did, while acting under color of state law, INTENTIONALLY violate the federal civil rights of Plaintiff in that defendant directed and ordered Plaintiff to engage in political campaign activities, including, but not limited to petitioning and rendering financial donations to defendant's husband – MICHAEL E. McMAHON - in exchange for Plaintiff's continued employment with the New York State Unified Court System, in violation of Plaintiff's federal civil rights set forth under the FIRST, FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION and defendant caused injury to Plaintiff as set forth herein.

333.    That Defendant was compelled, in 2015, to serve as notary public and witnesses signatures on the Independence Party petitions for MICHAEL E. McMAHON for the public office of District Attorney of Richmond County as a condition of Plaintiff's continued employment.

334.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

335.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

**CLAIM TWENTY-FIVE**

**Violation of 42 USC § 1983**

**DEFENDANTS KANTOR, MIKOS AND NYSCOA**

336.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

337.    Defendants, acting both individually and personally and in their official capacities as both New York State Court Officers and as officers of defendant NEW YORK STATE COURT OFFICERS' ASSOCIATION, did, while acting under color of state law both individually and acting in concert with one another and with others, INTENTIONALLY violate Plaintiff's federal civil rights under the FIRST, FOURTH and FOURTEENTH AMENDMENTS TO UNITED STATES CONSTITUTION.

338.    That said Defendants did execute an open and notorious campaign of retaliation against Plaintiff at Plaintiff's place of employment at 26 Central Avenue, County of Richmond, City and State of New York, in retaliation for Plaintiff having reported official acts of corruption and misconduct of public concern having been committed by defendant McMAHON and NYSCOA LEADERSHIP to the Authorities, including the UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK AND THE INSPECTOR GENERAL OF THE NEW YORK STATE UNIFIED COURT SYSTEM in violation of Plaintiff's rights under the Petition Clause of the First Amendment to the United States Constitution, as well as Plaintiff's rights to privacy and procedural and substance due process, including his property interest in his employment.

339.    That said acts of retaliation include, but are not limited to the unlawful seizure of Plaintiff's person at the above location, acts of defamation against Plaintiff

including, but not limited to knowingly false accusations to various press and other media outlets that Plaintiff committed acts of attorney misconduct and other bad acts.

340.    That other acts of said defendants' retaliatory conduct include defendants having inflated a rat that stood in excess of six feet in height at Plaintiff's above place of employment and that said rat bore Plaintiff's name and the name of another corroborating witness who provided accounts of official corruption and misconduct having been committed by QUIRK and others.

341.    That said rat bearing Plaintiff's name was featured in various press and media outlets along with defamatory quotes from the above-named defendants and that by these actions of the above-named defendants, Plaintiff's professional reputation and ability to obtain other employment as an attorney, administrator and otherwise were damaged severely and irreparably.

342.    Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

343.    Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM TWENTY-SIX

## Pendent Claim Under New York State Labor Law § 740 and New York Civil Service Law § 75-b pursuant to 28 USC § 1367

## DEFENDANTS McMAHON, YOUNKINS AND GEORGE

344.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

345.     Defendants, for all of the foregoing reasons, by the acts and practices described above, did retaliate against Plaintiff by taking adverse employment actions against him because Plaintiff engaged in protected activity and because Plaintiff did report violations of law, rule and regulation that presented a specific danger to the public health or safety.

346.     Defendants' actions and omissions were the proximate cause of injury to Plaintiff.

347.     Plaintiff suffered damages caused by the Defendants' actions and omissions in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM TWENTY-SEVEN

## CONSPIRACY: Pendent Claim Under New York State law pursuant to 28 USC § 1367

## ALL DEFENDANTS

348.     Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

349.     An agreement existed as between the Defendants.

350.     Each of the Defendants committed an overt act in furtherance of the agreement.

351.     The Defendants' participation in the furtherance of a plan or purpose was intentional.

352.     The Defendants' activities resulted in damage and/or injury to Plaintiff in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM TWENTY-EIGHT

## NEGLIGENCE: Pendent Claim Under New York State law pursuant to 28 USC § 1367

## ALL DEFENDANTS

353.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

354.    Defendants and each of them owed a duty to Plaintiff to protect the Plaintiff from a particular injury or damage within the scope of Plaintiff's employment.

355.    Defendants and each of them breached this duty.

356.    Defendants' breach was the proximate cause of injury or damage to Plaintiff.

357.    Plaintiff suffered damages caused by the breach in an amount to be proved at trial, but under no circumstances less than $100,000.00.

## CLAIM TWENTY-NINE

## TORTIOUS INTERFERENCE WITH EMPLOYMENT: Pendent Claim Under New York State law pursuant to 28 USC § 1367

## ALL DEFENDANTS

358.    Plaintiff repeats, restates, and realleges all paragraphs as stated above as if fully stated herein and further alleges as follows:

359.    Defendants knew of the existence of an employment relationship as between the Plaintiff and the New York State Unified Court System.

360.    Defendants intentionally procured the substantial alteration of Plaintiff's employment without justification.

361.    Plaintiff's previous employment relationship with the New York State Unified Court Systems is, for all intents and purposes, fundamentally and substantially altered.

362.    The Defendants' activities resulted in damage and/or injury to Plaintiff in an amount to be proved at trial, but under no circumstances less than $100,000.00.

**WHEREFORE**, plaintiff respectfully prays for judgment as follows:

(a)    On CLAIM ONE through CLAIM TWENTY-SIX (inclusive), vindication of the Plaintiff's civil rights.

(b)    On CLAIM ONE through CLAIM TWENTY-SIX (inclusive), for incidental, compensatory, nominal, and restitutive damages against all Defendants in an amount to be proven at trial;

(c)    On CLAIM ONE through CLAIM TWENTY-SIX (inclusive), for exemplary and punitive damages against all Defendants in an amount to be awarded after trial;

(d)    On CLAIM ONE through CLAIM TWENTY-SIX (inclusive), reinstatement of the Plaintiff to his previous position of employment as Chief Clerk of the Supreme Court, Richmond County, New York;

(e)    Appointment of a Federal Monitor as to the Richmond County, New York Courts, and where applicable the New York State Office of Court Administration;

(f)    For costs, expenses, and disbursements of suit herein, including plaintiff's reasonable attorney's fees pursuant to 42 USC § 1983; and;

(g)    For such other and further relief as the court deems proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands

a trial by jury.

Respectfully submitted,

Dated: December 11, 2017
Staten Island, New York

By: RICHARD A. LUTHMANN
LUTHMANN LAW FIRM PLLC
Attorney for Plaintiff
Office and Post Office Address
1811 Victory Boulevard
Staten Island, New York 10314
T: (718) 447-0003
F: (347) 252-0254
E: rluthmann@luthmannfirm.com

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Executed:    Staten Island, New York
December 11, 2017

MICHAEL J. PULIZOTTO